IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID MCNISH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 16-cv-00430-JPG |
| | ) |
| DOCTOR KAYIRA, | ) |
| CECIL POLLY, | ) |
| SUZANN GRIFFIN, | ) |
| DIRECTOR I.D.O.C., | ) |
| WEXFORD MEDICAL SOURCES | ) |
| J. LASHBROOK, and | ) |
| LARUE LUVE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff David McNish is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). McNish brings this *pro se* action for deprivations of his rights under the Eighth and Fourteenth Amendments, as well as the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, pursuant to 42 U.S.C. § 1983.

This matter is now before the Court for a preliminary review of McNish's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During this preliminary review under § 1915A, the Court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim on which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief." Upon careful review of the

complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A.

## Background

The complaint alleges the following facts. On January 22, 2016, McNish began his period of incarceration in the Illinois Department of Corrections ("IDOC") prison system.[1] On that day, he was given a wheelchair. The wheelchair, however, was faulty—its wheels were loose, it lacked a footrest, and it contained a sharp piece of metal that regularly injured McNish's buttocks and thighs.

On January 22, 2016, Plaintiff fell down from his wheelchair a second time. (He does not indicate when he first fell from his wheelchair.) The fall resulted in a dislocated shoulder; however, he received no medical care. He had made two requests for a functional wheelchair and sent an undisclosed amount of grievances to that effect, but he received no responses. Therefore, he reached out to Defendants Warden Cecil Polly, Suzann Griffin, Wexford Medical Sources ("Wexford"), and the Director of IDOC ("Director") by way of phone calls from friends and family members. Defendants, however, ignored these pleas.

On April 1, 2016, McNish again fell from his wheelchair. He filed another grievance. However, he alleges that his grievance was destroyed, based on his discovery that several inmates' grievances had been deposited in a garbage bag and thrown away by unknown individuals. McNish asked both Griffin and Defendant Dr. Kayira for a new or working wheelchair. Griffin told him to "man-up and stop crying and stop coming to prison," and that he should "tell somebody who gives a fuck."

---

[1] Because he is suing Warden Cecil Polly, Warden of Graham Correctional Center ("Graham"), it appears that he was housed at Graham before being transferred to Pinckneyville.

In retaliation for complaining about his wheelchair, McNish was transported to Pinckneyville on a disciplinary transfer, even though there was "no disciplinary reason" for such a transfer. He requested a new or working wheelchair, but Defendants Warden Lashbrook and LaRue Luve evidently did nothing about his request and, in fact, McNish alleges that the two ordered many an "ADA" inmate to "stop crying like a lil [sic.] bitch" when faced with ADA complaints.

On April 13, 2016, McNish again requested a new or working wheelchair, this time specifically because his feet, with nowhere to rest but the floor absent a foot rest, were impeding his travel. In fact, apparently on that same day, McNish's wheelchair tripped over his feet when he was being pushed by an attendant. He fell from his chair onto the left side of his body, the same side of his body that had been most affected by his seven strokes.

"Defendant"—he does not indicate which defendant—sent him to the health care unit so that he could be given a new wheel chair "and a few other things he needed." However, he evidently did not receive a new wheelchair for, on April 14, 2016, "that broken no foot-rest [wheelchair] was brought back to him un repaired [sic.]." Further injury resulted when his left foot became stuck between the spokes of one of the wheelchair's loose wheels. Medical care was refused (but by whom, he does not say).

## Discussion

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**COUNT 1:**   Defendants Lashbrook and Luve violated McNish's Eighth Amendment rights when they failed to replace his faulty wheelchair with a new or working wheelchair.

**COUNT 2:**   IDOC violated the ADA when it failed to replace McNish's faulty wheelchair with a new or working wheelchair while at Pinckneyville.

**COUNT 3:**   Defendants Polly, Griffin, Wexford, the Director, and Kayira violated McNish's Eighth Amendment rights when they failed to replace his faulty wheelchair with a new or working wheelchair.

**COUNT 4:**   IDOC violated the ADA when it failed to replace McNish's faulty wheelchair with a new or working wheelchair at Graham.

**COUNT 5:**   Defendant Polly retaliated against McNish by transferring him to Pinckneyville.

## Discussion

**Count 1** may proceed against Lashbrook and Luve. To state a medical claim under the Eighth Amendment, a plaintiff must show that his condition "was objectively serious," and that officials acted with the requisite intent towards that condition. *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). For screening purposes, McNish's claim passes the objective hurdle—past physical injuries have rendered him confined to a wheelchair, he has experienced discomfort seemingly daily due to the wheelchair's faulty condition, and has been physically injured from falling from the wheelchair several times. *See Gutierrez v. Peters*, 111 F.3d 1364, 1372 n.7 (7th Cir. 1997). McNish's claim also passes the subjective hurdle—allegations of a failure to treat can constitute indifference, depending on the circumstances. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011); *McGowan v. Hulick*, 612 F.3d 636, 640-41 (7th Cir. 2010).

**Count 2** also survives preliminary review. To establish a violation of Title II of the ADA, a plaintiff must prove that he is a "qualified individual with a disability," that he was denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to

discrimination by such an entity, and that the denial or discrimination was "by reason of" his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citing *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996) (citing 42 U.S.C. § 12132)). A claim under the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794-94e, is "functionally identical" to an ADA claim. *Wagoner*, 778 F.3d at 592. It requires a plaintiff to allege that "(1) he is a qualified person (2) with a disability and (3) the [state agency] denied him access to a program or activity because of his disability." *Jaros v. Ill. Dep't of Corr.,* 684 F.3d 667, 672 (7th Cir. 2012). To proceed with an RA claim, the relevant state agency (i.e., IDOC) must also accept federal funds, which all states do. *Id.* at 671 ("[T]he analysis governing each statute is the same except that the Rehabilitation Act includes as an additional element the receipt of federal funds, which all states accept for their prisons.") (citations omitted).

Based on the fact that he was bound to a wheelchair, McNish is arguably a qualified person with a disability under both the ADA and RA. *See* 42 U.S.C. § 12102(1); 29 U.S.C. § 794. Because he alleges that he was a denied a new or functioning wheelchair, McNish's claim is sufficient, in this threshold period, to constitute a valid claim under the ADA and RA.

However, **Count 2** cannot proceed against the individual defendants. Individual employees of IDOC cannot be sued under the ADA or RA. *Id.* at 670. The proper defendant is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670 n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity)). McNish has named the unknown IDOC Director as one of the defendants in this action. Plaintiff shall be allowed to proceed with **Count 2** against the Director, in his or her official capacity. This claim shall be dismissed with prejudice against the Director, in his or

her individual capacity, and against all other defendants, in their individual and official capacities.

McNish may not proceed with **Counts 3-5** in this case. These claims arose at Graham, which is located in another judicial district (the Central District of Illinois) and, therefore, severance is appropriate. Consistent with Federal Rule of Civil Procedure 21, the Court shall sever **Counts 3-5** of McNish's complaint and shall open a new case with a newly assigned case number for those claims. A separate filing fee will be assessed in the newly-severed action; this fee is *in addition* to the filing fee that McNish is already obligated to pay for this case. The newly-severed case will be required to be separately screened pursuant to § 1915A. *See Wheeler v. Wexford Health Sources*, 689 F.3d 680, 683 (7th Cir. 2012).    2013 WL 3353926  2016 WL 97775

Further, the severed case shall be transferred to the Central District of Illinois, where the conduct giving rise to these claims and the defendants are located. The disposition of the severed action shall be determined by the transferee court.

### **Pending Motions**

The same day he filed his complaint, McNish filed a motion for recruitment of counsel (Doc. 3) and a motion for service of process at government expense (Doc. 4). The Court will first discuss McNish's motion for counsel. There is no constitutional or statutory right to appointment of counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). However, federal district courts have discretion under 28 U.S.C. § 1915(e)(1) to request counsel to assist pro se litigants. *Id.* When presented with a request to appoint counsel, the Court must make the following two inquiries: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of

the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Concerning the second step of the inquiry, "the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Id.* at 655. From a legal standpoint, the litigation of any constitutional claim falls in the complex range. Even so, McNish's petition adequately articulates his claims, and based on this ability, this Court concludes that McNish appears to be competent to litigate his case on his own at this time. Future developments in this case may alter the Court's decision, but at this early stage in the litigation, McNish's motion for appointment of counsel will be **DENIED** without prejudice. McNish may choose to re-file this motion at a later stage in the litigation.

McNish's motion for service of process at government expense is **GRANTED**. Waivers of service of summons will be issued and served on Defendants as ordered below. McNish is advised that it is not necessary for a litigant proceeding *in forma pauperis* to file a motion requesting service of process by the United States Marshal Service or other process server. The Clerk will issue summons and the Court will direct service for any complaint that passes preliminary review.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **LASHBROOK** and **LUVE**.

**IT IS FURTHER ORDERED** that **COUNT 2** may **PROCEED** against **DIRECTOR** in his or her official capacity. **COUNT 2** shall be **DISMISSED with prejudice** as to **DIRECTOR**,

in his or her individual capacity, and against **ALL OTHER DEFENDANTS**, in their individual and official capacities.

**IT IS FURTHER ORDERED** that **COUNTS 3-5** are **SEVERED** into a new case, which shall be captioned: **DAVID MCNISH, Plaintiff v. DOCTOR KAYIRA, CECIL POLLY, SUZANN GRIFFIN, DIRECTOR I.D.O.C., and WEXFORD MEDICAL SOURCES, Defendants**.

The Clerk is **DIRECTED** to file the following documents in the new case:

(1) This Memorandum and Order; and

(2) The Complaint (Doc. 1);

Plaintiff will be responsible for an additional $350.00 filing fee in the new case. If he seeks the Court's assistance in recruiting counsel in that case, he must file a new motion. This Court will separately issue an Order transferring the newly-severed case to the Central District of Illinois.

**IT IS FURTHER ORDERED** that the only claims remaining in this action are **COUNT 1** and **COUNT 2**. This case shall now be captioned: **DAVID MCNISH, Plaintiff v. DIRECTOR I.D.O.C., J LASHBROOK, and LARUE LUVE, Defendants.**

As to **COUNTS 1** and **2**, which remain in this case, the Clerk of Court shall prepare for Defendants **DIRECTOR I.D.O.C.**, **LASHBROOK**, and **LUVE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the

Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to a Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the

full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: May 16, 2016

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**